FILED
2015 Dec-07  PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **PAUL BOYLE,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.:** |
| | ] | **4:14-CV-1603- KOB** |
| **CITY OF PELL CITY,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

This case, asserting federal claims under the FLSA and § 504 of the Rehabilitation Act and certain claims under Alabama law, is before the court on "Defendant's Partial Motion to Dismiss." (Doc. 26).   The Plaintiff filed a response to the motion (doc. 35), and Defendant replied (doc. 38); this matter has received thorough briefing.  For the reasons stated in this Memorandum Opinion, the court FINDS that the motion is due to be GRANTED.

## I.  PROCEDURAL BACKGROUND

The Plaintiff, Paul Boyle, filed this lawsuit (doc.1) on August 18, 2014, and subsequently filed three amended complaints.   (Docs. 3, 13, & 24).  The Second Amended Complaint asserted six causes of actions: Count I and V–violations of § 504 of the Rehabilitation Act of 1973; Count IV–violation of the Fair Labor Standards Act; and the claims under state law of quantum meruit (Count II); unjust enrichment (Count III); and breach of contract (Count VI).  *See* Doc. 13.

On February 2, 2015, the Defendant, the City of Pell City, filed a partial motion to dismiss the Second Amended Complaint (doc. 15), requesting that the court dismiss all counts

except the two claims under the Rehabilitation Act.  The court granted that motion, dismissing Counts II, III, IV and VI without prejudice.  (Doc. 21).  As to the state claims, this court found that they fell within § 11-47-23 of the Alabama Code, and that they were barred because Boyd did not provide notice to Pell City of the claims within two years of their accrual as that statute requires.  *See* Ala Code § 11-47-23.   The court rejected Boyle's argument that the claims were for a pre-existing contractual debt because he did not include allegations regarding a pre-existing contractual debt in his Second Amended Complaint.  As to Boyle's FLSA claim, the court found that it was due to be dismissed because he did not bring it within two years of the cause of action's accrual, and because he had not alleged willful violations of the FLSA, which would be subject to a three-year statute of limitations.

On May 30, 2015, Boyle filed his "Third Amended Complaint"  (doc. 24), which asserted the same six claims but added, among other things, allegations regarding a pre-existing contractual debt and willful violations of the FLSA.  The City filed a motion for partial dismissal of the Third Amended Complaint, requesting dismissal of all claims except those asserted in Counts I and V under the Rehabilitation Act.   (Doc. 26).

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

2

544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662,

678 (2009).   Pleadings that contain nothing more than "a formulaic recitation of the elements of

a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely

upon "labels or conclusions" or "naked assertions" without supporting factual allegations.

*Twombly*, 550 U.S. at 555, 557.

        The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).

To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the

complaint must demonstrate "more than a sheer possibility that a defendant has acted

unlawfully." *Id.*   "Where a complaint pleads facts that are merely consistent with a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

*Id.*  (quoting *Twombly*, 550 U.S. at 557).

        The Supreme Court has identified "two working principles" for the district court to use in

applying the facial plausibility standard.   The first principle is that, in evaluating motions to

dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the

court does not have to accept as true legal conclusions even when "couched as [] factual

allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements." *Iqba*l, 556 U.S. at 678.   The second principle is that "only a complaint

that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.  Thus, under

prong one, the court determines the factual allegations that are well-pleaded and assumes their

veracity, and then proceeds, under prong two, to determine the claim's plausibility given the

well-pleaded facts.  That task  is "context-specific" and, to survive the motion, the allegations

must permit the court based on its "judicial experience and common sense. . . to infer more than

the mere possibility of misconduct." Id.  If the court determines that well-pleaded facts, accepted

as true, do not state a claim that is plausible, the claim must be dismissed.  *Id.*

### III. STATEMENT OF FACTS

In March of 2001,  Boyle was injured while working as a heavy equipment operator for

the City.  Because Bolye's injuries and resulting problems with his back prevented him from

continuing to work as a heavy equipment operator, the City transferred him to a foreman

position, which was more sedentary in nature.

Boyle alleges that a written employment contract existed between him and the City

transferring him to foreman, and the Third Amended Complaint referred to two documents[1] to

---

[1] The court considers these documents, which the City attached to its opposition brief, without converting this partial motion to dismiss into a motion for summary judgment, as Boyle refers to these documents in his Third Amended Complaint, and as these documents are central to his claims.  *See Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 n. 7 (11th Cir. 2005).  In Boyle's responsive brief, he refers to these documents and does not dispute that these documents are true and correct copies of the November 2005 agreement and the 2012 document.

The court further notes the City's argument based on the City Handbook's provisions. These arguments would require the court to include in its analysis a document that was not explicitly referenced in the Complaint but was one more step removed: the City Handbook was referenced in the documents referenced in the Complaint.  The Third Amended Complaint did not refer to and incorporate the City Handbook provisions, but instead, referred to the November 2005 agreement and the June 2012 document, each of which, in turn, referred to the City Handbook.  The City provides no support for its assumption that the court can consider such documents as part of the face of the pleading, and the court did not consider them.

4

support that allegation.   The first document was entitled "Aggreement [sic] between Mike

Maritn [sic] & Paul Boyle" on City of Pell City Street Department letterhead.  It was  dated

November 9, 2005 and signed by Mike Martin as Street Department Superintendent, Judy Tipton

as Personal [sic] Officer, and Paul Boyle.  The November 2005 agreement stated that Martin

appointed Boyle as acting foreman/supervisor as a "lateral move ... at Heavy Equipment

Operators pay" effective immediately until the position of foreman/supervisor is officially posted

but that his tenure was "for a period of time not exceeding but not limited to two years without

renegotiating the agreement."  The agreement repeatedly referred to the "Pell City Hand Book"

and stated that the termination of the position "will be in writing with proper notice to [ ] Boyle,"

and that Boyle "will return to daily work as a Heavy Equipment Operator for the Street

Department, with no lost wages."  (Doc. 27, at 22)[2].

        The second document, dated June 6, 2012, six-and-a-half years later, was entitled "Re:

---

        [2] The full text of the November 9, 2005 agreement was:
This is an agreement between **Paul Boyle (aka/ he, him) & Mike Martin (aka/ myself, I, me)**
to establish a designated person(s) to be in charge to make decisions on behalf of **myself, Mike
Martin, Department Head** for the Street Department, in the event I am not present, in
accordance to the 2003 Pell City Hand Book page 21, section C 1 & 2 as acting
foreman/supervisor for the Street Department.  As of the date stated above **Paul Boyle** has been
appointed by **me**, to be that designated person(s) to have the full authority to make the decisions
for the daily operations in the Street Department.  This will be effective immediately from the
date stated at the top of this page.  This will be considered a lateral move, for **him** at the Heavy
Equipment Operators pay, and he will receive the yearly merit pay increases, in accordance to the
2003 Pell City Hand Book page 22: section E, 1-3 until the position of foreman/supervisor is
officially posted.  The designated person(s), **Paul Boyle**, understand and is willing to cooperate
with **me**, in the time not exceeding but not limited to two years without renegotiating the
agreement.  The position will be, as if **he** is the, acting foreman/supervisor, of the Street
Department, under **myself** until further notice in accordance with the 2003 Pell City Hand Book
page 21: section C 1&2.  The termination of the foreman/supervisor position will be given in
writing, with proper notice, to **Paul Boyle**, and **he** will return to daily work as a Heavy
Equipment Operator for the Street Department, with no lost wages.

Renegotiation Agreement between Mike Martin and Paul Boyle November 9, 2005" and was again on City of Pell City Street Department letterhead.  However, it only contained the signatures of Mike Martin as Street Department Superintendent, and Paul Boyle; a signature line for Judy Tipton "Personal [sic] Officer/Mayoral Assistant," remained blank.  In that document, Martin stated that it had come to his attention that the November 2005 agreement was five years overdue for renegotiation.  Martin complimented Boyle's performance as acting foreman and stated: "It is my opinion, due to the long overdue renegotiation of the agreement, without any discrimination that Paul is to be compensated for the time, (November 9, 2008 to June 6, 2012) that he has rendered, beyond the scope of the agreement, being the Foremen[sic]/Supervisor of the Street Department, in accordance with the 2003 Pell City Employee Hand Book. . . ." (Doc. 27, at 24)[3].

After his transfer to the foreman positing, Boyle continued to be paid at the heavy equipment operator rate of $15 per hour instead of receiving the typical foreman position rate of $23 per hour.  He also received overtime pay at the heavy equipment operator rate instead of at

---

[3] The full text of this document read as follows:
It has come to **my** attention that the agreement between **Mike Martin (myself, me, I) and Paul Boyle (he, his),** dated Nov.9, 2005 is five years overdue for renegotiation.  Since November 9, 2005 till present, **Paul Boyle** has been designated and appointed by **me** as the acting Foreman/Supervisor for Street Department with full authority to make the decisions for the daily operations for the Street Department.  **Paul** [sic] daily performance has exhibited exceptional leadership skills, public relations, and operated the Streep [sic] Department in the most professional way possible.  **Paul** has maintained the integrity of **his** part of the agreement without any hesitation, and continues to perform daily.  It is **my** opinion, due to the long overdue renegotiation of the agreement, without any discrimination that **Paul** is to be compensated for the time, (**November 9, 2008 to June 6, 2012**) that **he** has rendered, beyond the scope of the agreement, being the Foremen[sic]/Supervisor of the Street Department, in accordance with the 2003 Pell City Employee Hand Book page 21: sec C #1.  This should take place immediately and continue from this day forward.

the typical foreman position rate.   Although  Boyle did not receive the compensation and

overtime pay at the rate of a foreman, he continued to work as foreman until after Martin retired

and the City hired Greg Gossett into the Street Department Superintendent position.  Gossett

called a staff meeting and, without prior notice to Boyle, announced orally at the meeting that he

was replacing Boyle with another employee for the foreman position.

Even though Gossett knew about Boyle's on-the-job injury and back issues, he assigned

Boyle to inventory the entire department, a job requiring physical exertion, such as lifting,

pushing, pulling and twisting that put a strain on Boyle's back.  Next, Gossett ordered Boyle in

June of 2012 to operate heavy equipment.  When Boyle advised Gossett that his back condition

prevented him from physically operating the heavy equipment, Gossett ordered him to perform

that job anyway.  After Boyle performed that job for a full day, the strain of that position caused

him to suffer extreme back pain, and he was forced to take two days off work to recover.  When

Boyle returned to work, he still suffered from back pain, and he requested that the City provide

him with a reasonable accommodation and allow him to return to the foreman position, but the

City refused.  The City provided no explanation for his removal from the foreman job, which he

could perform, and his assignment to more physically challenging jobs, which he could not.

Boyle alleges that the City constructively discharged him when it placed him in a job he could

not physically perform and refused to accommodate his physical limitations.

## IV.  DISCUSSION

The partial motion to dismiss encompasses the following claims: Quantum Meruit (Count

II); Unjust Enrichment (Count III); violation of the Fair Labor Standards Act (Count IV); and

Breach of Contract (Count VI).

7

A.  The Federal FLSA Claim

Defendant argues that the FLSA claim is due to be dismissed because the face of the

Third Amended Complaint reflects that it fails to state a claim and that it is time-barred.  The

court had previously found that Boyle failed to bring suit within two years of the date his FLSA

claim accrued: his claim accrued no later than June of 2012, but he filed this suit on August 18,

2014.  *See* 29 U.S.C. § 255(a).  "Willful" violations of the FLSA are subject to a three year

statute of limitations (*see id.*), but this court found that the Second Amended Complaint failed to

allege facts that would give rise to the inference that the City knew it was violating the FLSA or

acted with reckless disregard.  Because the FLSA claim was clearly untimely based on the

allegations, the court did not further analyze the FLSA claim to determine, if timely, it

sufficiently stated an FLSA claim.  In retrospect, the court should have done so to avoid an

unnecessary second look.  In any event, the court must now determine whether the Third

Amended Complaint sufficiently alleges such facts to state an FLSA claim, and if so, if it also

sufficiently alleges facts supporting a claim that the violation was willful to fall within the three

year statute of limitations.

As set out in the fact section, the Third Amended Complaint alleges that the City entered

into an agreement that, in effect, appointed Boyle to a foreman position as an accommodation

after he suffered an injury and could not physically perform his Heavy Equipment Operator

position.  That agreement specified that Boyle would continue to be paid at the Heavy Equipment

Operator rate, which was $15 per hour and was above the minimum wage, but was below the

typical foreman rate of $23 to $24 per hour.  Boyle acknowledges in his pleading that the City

paid him for the hours he worked at $15 per hour and paid him overtime that was appropriate

based on the Heavy Equipment Operator rate.  Boyle claims he should have been paid a foreman hourly wage and foreman overtime wage while he was working as a foreman.

But here is the rub:  nothing in the FLSA[4] prohibits a company from paying adult employees a wage that is unfair—not commensurate with what other employees in a plaintiff's position are being paid—as long as (1) that wage meets the minimum wage requirements; (2) the employer pays for overtime at a rate not less than one and one-half times the regular rate at which he is employed; and (3) the employer keeps employment records as the FLSA requires.  The United States Supreme Court explained that the regular rate is "the hourly rate *actually paid the employee* for the normal, non-overtime workweek for which he is employed."  *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 424 (1945) (emphasis added).  Neither the FLSA nor the Supreme Court nor any other controlling authority defines "regular rate" as Boyle defines it:  the rate that the employer paid other employees at the same position.

In the instant case, Boyle's allegations in the Third Amended Complaint do not reflect any violation of the FLSA.  The "regular rate" of his wages, $15 per hour, did not violate the FLSA's minimum wage requirement, and he alleges that he was paid at an overtime rate based

---

[4] The FLSA provides in relevant part:
**29 U.S. Code § 206 -- Minimum Wage**
Every employer shall pay to each of his employees [engaged in commerce], wages at the following rates:
(1) except as otherwise provided in this section, not less than--
(C) $7.25 an hour. . .
and
**29 U.S. Code § 207 - Maximum Hours**
(a) (1)
[N]o employer shall employ any of his employees who in any workweek is [engaged in commerce], for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half the regular rate at which he is employed.

on that regular rate for the overtime hours he worked.  If the City willfully failed to pay him the

rate it paid other foremen for doing a foreman's job, that willful conduct may arguably be unfair[5],

but it does not state a claim for violation of the FLSA.  Accordingly, the court FINDS that the

claim set out in Count IV fails to state a claim for violation of the FLSA; it is due to be

DISMISSED. As this pleading is Boyle's fourth attempt to state a claim under the FLSA, Boyle

has had ample opportunity to do so, and the court will dismiss the FLSA claim WITH

PREJUDICE.

 B.  The State Claims

 In the Third Amended Complaint, Boyle asserts state-law claims against Pell City for

breach of contract, quantum meruit, and unjust enrichment.  As the court stated in its previous

Memorandum Opinion, finding that these claims were due to be dismissed as untimely, claims

brought against a municipality under Alabama law must be "presented to the clerk for payment

within two years from the accrual of said claim or shall be barred."  Ala. Code § 11-47-23[6].   The

Alabama Supreme Court has noted that § 11-47-23 "is not merely a statute of limitations, but is

'a statute of nonclaim similar to the probate nonclaim statute.'" *Wheeler v. George,* 39 So. 3d

1061, 1085 (2009) (quoting *Ivory v. Fitzpatrick,* 445 So. 2d 262, 264 (Ala. 1984)).  The City

argues that § 11-47-23 bars claims brought against the City under the Third Amended Complaint

---

 [5] Of course, the City may have a reasonable explanation for this "unfair" treatment, such as the desire to accommodate Boyle by placing him in a foreman position that he could physically perform even if it would not otherwise have placed in that position. The court notes that the November 2005 agreement, which Boyle signed, specified that the move to foreman was a lateral move as opposed to a promotion, and that he would be paid at the $15 hourly rate.

 [6] Section 11-47-23 also provides that "[c]laims growing out of torts shall be presented within six months from the accrual thereof or shall be barred."  Boyle states that his state claims sound in "contract or equity, *not* in tort."  (Pl's Resp. Br. Doc. 35, at 3-4).

because the new allegations do not affect the bar that this court recognized and applied to the Second Amended Complaint.

Boyle disagrees.  Although none of  the additional allegations of the Third Amended Complaint stated that Boyle complied with the two-year notice requirements of § 11-47-23, Boyle renews his arguments that his claims are not subject to that section because his claims for lost wages were a pre-existing contractual debt that the City owed to him.  In the Third Amended Complaint, he stated that his assertion of a pre-existing contractual debt was based on two documents: a 2005 contract and a June 2012 acknowledgment in writing.  He provided no other alleged facts as a basis for this assertion.  The Defendants' brief in support of its latest motion to dismiss attached these two documents.  (Doc. 27, at 22 & 24).

Because the Third Amended Complaint incorporated by reference these two documents that are central to Boyle's claims, and because neither party disputes the documents' contents, the court can consider those documents as part of the pleading for the purposes of addressing a motion to dismiss.  *See Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 n. 7 (11th Cir. 2005). Further, the court properly considers a time bar defense at this motion to dismiss stage if the time bar "is facially apparent." *Baker v. Sanford,* 484 F. App'x 291, 292 (11th Cir. 2012).

To support his argument that his state claims fall outside the bar of § 11-47-23 because they are for acknowledged debts, Boyle cites the case of *Hood v. City of Birmingham,* 562 So. 2d 164 (Ala. 1990).   In *Hood,* an executrix of an attorney sued the City of Birmingham for breach of contract to pay the attorney's legal fees. The executrix filed her notice of claim on January 30, 1989 for legal services performed on behalf of Roosevelt City from January 1972 until February 1984, more than two years before the claim.  On March 6, 1984, however, long before she filed

suit, "Roosevelt City, through its mayor and city council, entered into a written agreement that itemized [the attorney's] services ... and acknowledged its debt to him." *Id.* at 164.  When the executrix filed her claim against the City of Birmingham, the successor-in-interest to Roosevelt City, the trial court dismissed her claim, and the City of Birmingham argued on appeal that her failure to comply with § 11-47-23 barred her suit.  The Alabama Supreme Court reversed and remanded, finding that dismissal was inappropriate because  "[t]he 'claim spoken of in § 11-47-23 does not include a contractual obligation known to and acknowledged by the city.  Mrs. Hood's 'claim' was actually one for a debt (and not a claim contemplated by § 11-47-23) ...." *Id.* at 165.  *Hood* does not stand for the proposition that every claim under a contract with a city falls outside § 11-47-23.   Rather, it stands for the proposition that every debt, including those based on contract, known to *and acknowledged* by the city, falls outside § 11-47-23.

The court must determine whether the two central documents referenced in Boyle's Third Amended Complaint, and thus, part of the face of that pleading, sufficiently support his claim of a contractual obligation known to and acknowledged by the city, OR whether they reflect that his claim is the usual variety that requires compliance with § 11-47-23.  If the claim is an acknowledged debt like the one in *Hood*, then it falls outside § 11-47-23, and the court need only look to the relevant statutes of limitation.  On the other hand, if it is a claim that the City has not acknowledged that it owes, then Boyle's failure to provide the requisite notice within two years to the City bars the claim(s) as untimely.

The court turns to the language in the two documents.   As set out earlier in the fact section, the November 9, 2005 agreement reflects that Mike Martin, Street Department Superintendent for the City, appointed Boyle as acting foreman/supervisor "as a lateral move ...

12

at Heavy Equipment Operators pay ... until the position of foreman/supervisor is officially

posted." (Doc. 27, at 22).  This document is on City of Pell City Street Department letterhead and

is signed by Martin as Street Department Superintendent, Judy Tipton as Personnel Officer, and

Paul Boyle.  The June 2012 document that Mike Martin also prepared is on City of Pell City

Street Department letterhead and contains the signatures of Paul Boyle and also Mike Martin as

Street Department Superintendent, but the signature line designated for Judy Tipton as "Personal

[sic] Officer/Mayoral Assistant" is blank.  In that document, Martin stated:

> It is **my** opinion, due to the long overdue renegotiation of the agreement, without
> any discrimination that **Paul** is to be compensated for the time, **(November 9,**
> **2008 to June 6, 2012)** that **he** has rendered, beyond the scope of the agreement,
> being the Foremen[sic]/Supervisor of the Street Department, in accordance with
> the 2003 Pell City Employee Hand Book page 21: sec C #1.  <u>This should take</u>
> <u>place immediately and continue from this day forward.</u>

(Doc. 27, at 24).

Boyle argues that these two documents, taken together, sufficiently state a claim that falls

outside § 11-47-23 because those documents reflect that the City knew about and acknowledged a

debt to Boyle.  According to Boyle, the November 2005 agreement reflects that the City appointed

Boyle as foreman, and the June 2012 document is an acknowledgment by a city employee,

Boyle's supervisor, that the City owed him foreman wages, because it had failed to pay Boyle at

the foreman rate from November 2008 to June 6, 2012.  Boyle does not allege that the mayor or

city council of Pell City agreed to or ratified these documents, but he does claim that the City

authorized both documents through the signatures of other city employees.

The November 2005 agreement appointing Boyle as acting foreman contains the

signatures of both the Personnel Officer for the City, and the Superintendent of the Street

13

Department, and the Third Amended Complaint alleges that Boyle worked as acting

foreman/foreman for years pursuant to this agreement.  Thus, the Third Amended Complaint,

incorporating the November 2005 agreement, *arguably* reflects that the City agreed to, or ratified,

Martin's appointment of Boyle as acting foreman on November 9, 2005.  Given that this same

agreement explicitly states that the appointment is *not* a promotion for Boyle and that Boyle's pay

remains at Heavy Equipment Operators pay, the court FINDS that this 2005 agreement is not, in

and of itself, an *acknowledgment* on the part of the City of a pre-existing  debt owed to Boyle for

wages at the foreman rate.  Even assuming *arguendo*—without deciding—that the November

2009 agreement was one that the City agreed to or ratified*,* that agreement, unlike the

acknowledgment in *Hood,* does not acknowledge a debt owed to Boyle.  It does not even state that

he is entitled to payment for the rate and position he now claims; to the contrary, it specifically

states that he is *not* so entitled.  Rather, the appointment of Boyle to the foreman position without

foreman pay is consistent with Boyle's own allegations that the move to a more sedentary position

was the City's attempt to offer an accommodation to his physical limitations.

The court notes the distinction between a claim based on a contract acknowledged by a

municipality versus a debt acknowledged by a municipality that arises from a contract.  In the first

category, the municipality acknowledges contracting with the claimant but does not acknowledge

owing the claimant under the contract: this category of claims must comply with § 11-47-23.   The

Supreme Court of Alabama has required plaintiffs asserting breach of contract claims against

cities—where the city did not deny contracting with the plaintiff but denied owing the plaintiff

under the contract—to satisfy the timeliness requirements of § 11-47-23.  *See, e.g., Morrow v.*

*Town of Littleton,* 576 So. 2d 210, 212 (Ala. 1991) (reversing grant of summary judgment for

14

town on breach of employment contract and finding that "the plaintiff satisfied the requirements of § 11-47-23 by filing his complaint within two years from the date his employment was terminated."). This requirement is consistent with the purpose of § 11-47-23: "to provide the city with notice of the claim, thereby enabling it to investigate and perhaps settle the claim without the expense of litigation." *See Williams v. Water Works & Gas Bd.,* 519 So. 2d 470, 472 (Ala. 1987). On the other hand, logic suggests and the Supreme Court of Alabama has found, that a city needs no such notice and opportunity to investigate when it knows about and has already acknowledged a debt. *See Hood,* 562 So. 2d at 164-65.

Based on *Hood* and *Morrow,* the key to whether the state claims fall within or without § 11-47-23 is not whether the city acknowledged the existence of the contract upon which they may be based, but whether the City acknowledged the *debt* due under the contract or otherwise. In the instant case, even if the court assumes *arguendo* that the November 2009 agreement represents a contract with Pell City, Pell City did not acknowledge in that agreement a debt due to Boyle.

The court next turns to the June 6, 2012 document to see if it represents the City's acknowledgment of a debt to Boyle, either by itself or in conjunction with the November 2005 agreement. The court sees no such acknowledgment in this document. The signature line for Judy Tipton, Personnel Officer/Mayoral Assistant remains blank, and Martin does not profess to have authority to contract on behalf of the City; rather, he specifically states that he is giving "my opinion" that Boyle should be properly compensated for the time he worked as foreman. Because the City allegedly paid Boyle wages at the heavy equipment operator's rate, as the November 2005 agreement provided, logic suggests that he is opining that Boyle be compensated at the higher foreman rate for the listed dates. Unlike the acknowledgment in *Hood,* which was a

15

written agreement by the mayor and city council itemizing the payments due and stating a total

debt due from the city to the claimant, the June 2012 document in the instant case specifically

stated that it presented the supervisor's "opinion" about what the City should pay, not the City's

acknowledgment of a debt.  This court "must look to the clear meaning of the words used in the

[document/contract] to ascertain the intent of the parties." *Wigington v. Hill-Soberg Co., Inc.,* 396

So. 2d 97, 98 (Ala. 1981).  Based on the clear language of the June 2012 document, the

memorandum unambiguously stated that Martin was presenting his opinion as Boyle's supervisor

that Boyle should be paid as a foreman for his time working in the foreman position.

The court acknowledges Boyle's argument that Martin's authority to contract for the City

is in dispute and raises a jury issue.  However, that "dispute" does not raise a jury issue where, as

here, the court has assumed *arguendo* at this stage that the City agreed to or ratified the November

2005 agreement and where the text of the June 2012 document states clearly that Martin is

recording his own "opinion" as opposed to making a binding acknowledgment on behalf of the

City.

The court FINDS that neither the November 2005 agreement nor the June 2012

document, standing alone, represents the City's acknowledgment of a debt to Boyle, and further

finds that the two documents, taken together, do not represent such an acknowledgment.  The

Alabama claims asserted in the Third Amended Complaint represent claims against Pell City that

must comply with § 11-47-23; they are *not* claims based on a debt that Pell City has

acknowledged.  As such, based on the face of the Third Amended Complaint, the Alabama claims

asserted in Count II–Quantum Meruit, Count III–Unjust Enrichment, and Count VI–Breach of

Contract, are barred as untimely pursuant to § 11-47-23, and are due to be DISMISSED.  As this

16

pleading is the fourth attempt to state these Alabama claims, Boyle has had ample opportunity to do so, and the court will dismiss these claims WITH PREJUDICE.

The court will enter a separate Order consistent with this Memorandum Opinion, and this case will proceed with Counts I and V, brought pursuant to § 504 of the Rehabilitation Act.

Dated this 7th day of December, 2015.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

17